**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION**

| | | |
|---|---|---|
| **MICHAEL SHANE HURD,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **Case No. 3:09-1136** |
| **v.** | ) | **Judge Haynes / Knowles** |
| | ) | **Jury Demand** |
| **SUMNER COUNTY JAIL, et al.,** | ) | |
| | ) | |
| **Defendants.** | ) | |

**REPORT AND RECOMMENDATION**

**I.  Introduction and Background**

Pending before the Court is a Motion for Summary Judgment filed by Defendant Southern Health Partners, Inc.  Docket No. 55.  Along with that Motion, Defendant has contemporaneously filed a supporting Memorandum of Law (Docket No. 56), a Concise Statement of Undisputed Facts (Docket No. 55-1), and the Affidavit of Melanie Miller, RN ("Miller Aff.") (Docket No. 55-2).

Plaintiff has not responded to Defendant's Motion or Concise Statement of Undisputed Facts.

Plaintiff, an inmate at the Sumner County Jail at all times relevant to the case at bar, filed this pro se, in forma pauperis, action pursuant to 42 U.S.C. § 1983, alleging violations of his

1

Eighth Amendment rights.  Docket Entry No. 1.  Plaintiff does not request any relief.[1]  *See Id.*

Defendant Southern Health Partners, Inc. filed the instant Motion and supporting materials on October 4, 2010.  Docket Nos. 55-56.  Defendant argues that it is entitled to Summary Judgment because: (1) Plaintiff cannot adduce any evidence that it was deliberately indifferent to any of his serious medical needs, and (2) §1983 does not provide for the imposition of liability based upon respondeat superior.  *Id.*  Defendant argues that the undisputed evidence establishes that its medical staff provided extensive care and treatment for Plaintiff's medical conditions, such that, while Plaintiff arrived in Jail with multiple spinal fractures from a car accident that rendered him unable to walk, he left the Jail "significantly improved after receiving extensive medical treatment" from Defendant's staff.  *Id.*

For the foregoing reasons, the undersigned recommends that Defendant's Motion for Summary Judgment be GRANTED.

---

[1]Plaintiff's failure to specify any relief sought violates the plain language of Fed. R. Civ. P. 8(a)(3).  Fed. R. Civ. P. 8(a) states as follows:

> **(a) Claim for Relief.** A pleading that states a claim for relief must contain:
>> (1) a short and plain statement of the grounds for the court's jurisdiction, unless the court already has jurisdiction and the claim needs no new jurisdictional support;
>>
>> (2) a short and plain statement of the claim showing that the pleader is entitled to relief; and
>>
>> (3) a demand for the relief sought, which may include relief in the alternative or different types of relief.

Because Plaintiff's Complaint fails to demand any relief, it fails to state a claim upon which relief can be granted.  S*ee, e.g., Ward v. Harris,* 2007 WL 4571074 *1-2 (E.D. Ky., 2007).  Plaintiff's Complaint, therefore, is subject to dismissal on those grounds.  *Id.*

## II. Facts[2]

Melanie Miller, R.N., obtained her RN degree from Broward Community College in Coconut Creek, Florida in 1995. Miller Aff., ¶ 2. Nurse Miller has been licensed as an RN by the states of Tennessee and Kentucky since approximately 2000. *Id.* For the past two and a half years, Nurse Miller has been employed by Defendant. *Id.* For all but one month of that time, she has been employed by Defendant as a nurse at the Sumner County Jail ("Jail"). *Id.* For just over one year, she has been the Medical Team Administrator ("MTA") of the Jail. *Id.*

Defendant provides medical care to inmates in various jail facilities, including the Sumner County Jail. *Id.*, at ¶ 3. During the entire time of Plaintiff's incarceration in the Jail, Defendant has provided health care services to inmates pursuant to a contract between Defendant and the Sumner County Commission. *Id.*

Health care in the Jail is provided under the direction of the MTA, as well as a Medical Director. *Id.* Nurse Windy Luttrell was the MTA at the Jail through approximately August 2009; thereafter, Nurse Miller became the MTA. *Id.* Dr. Edward Crutchfield was the Medical Director through approximately June 2009; thereafter, Dr. Kenneth Mathews was the Medical Director. *Id.*

When an inmate requires routine medical care, he obtains an inmate sick call form from the corrections officer on duty in the housing unit and that form is provided to the medical staff for action. *Id.*, ¶ 4. Routine sick calls are conducted by medical staff inside the housing unit. *Id.*

A true and correct copy of Plaintiff's medical chart from the date of his booking on May 15, 2009, through the filing of this lawsuit on November 30, 2009, is attached to Nurse Miller's

---

[2]The following facts are in a form required by Fed. R. Civ. P. 56 and are undisputed.

Affidavit as Exhibit A.  *Id.*, ¶¶ 5-6.

On May 11, 2009, four days prior to being booked in the Jail, Plaintiff had been in a car accident and had been treated for his injuries at Vanderbilt University Medical Center.  *Id.,* ¶ 7. Plaintiff's injuries included multiple spinal fractures, multiple rib fractures, and left toe fractures. *Id.*  While at the hospital, Plaintiff underwent surgical laminectomy and instrumentation for L2 to S1.  Dr. Nunez indicated in his discharge summary that Plaintiff could weight bear "as tolerated to left lower extremity" and was to wear a TLSO brace at all times when upright or out of bed. *Id.*  Plaintiff was discharged on Lortab and had a follow-up appointment scheduled for June 3, 2009, with the Orthopedic Trauma Clinic.  *Id.*  After his discharge, Plaintiff was taken into the custody of the police department and transported to the Sumner County Jail.  *Id.*

On May 15, 2009, upon his arrival at the Jail, Plaintiff was examined in the medical department by Nurse Sharon Panchisin, who noted that Plaintiff would be housed in a medical cell.  *Id.*, ¶ 8.  Plaintiff was transported to the medical department in a wheel chair with a two-person assist.  *Id.*  He was alert and oriented with no signs of acute distress, though he rated his pain as a 10 out of 10.  *Id.*  Plaintiff was given Lortab for his pain.  *Id.*

Between May 15, 2009 and May 29, 2009*,* Plaintiff was seen every day in the medical unit.  *Id.*, ¶ 9.  He was not able to bear weight and required total assist with all movement, which was provided by the nursing staff.  *Id.*

On May 16, 2009, Dr. Crutchfield ordered that Plaintiff receive Colace 100 mg twice per day, Lortab 7.5 mg every six hours as needed, and Dilantin 100 mg at the hour of sleep.  *Id.*  He also ordered daily wound care to Plaintiff's back.  *Id.*  The nursing staff complied with all of these orders.  *Id.*

On May 28, 2009, Dr. Crutchfield entered a detailed order outlining Plaintiff's pain medication regimen. *Id.*, ¶ 19. Dr. Crutchfield ordered Plaintiff to continue receiving Lortab 7.5 mg until June 4, 2009, then to receive Lortab 5 mg until June 11, 2009, then to receive Ultram 100 mg for two weeks. *Id.* Plaintiff was also to take Ibuprofen 800 mg along with the aforementioned medication. *Id.*

On May 29, 2009, Dr. Crutchfield examined Plaintiff. *Id., ¶* 10. He noted that Plaintiff was doing okay at the time of examination, but still had pain. *Id.* He decided to continue the current plan of care. *Id.* Dr. Crutchfield also noted that he would begin decreasing Plaintiff's pain medications. *Id.*

On June 3, 2009, Plaintiff attended his follow-up appointment. *Id.*, ¶ 11. After his appointment, the Jail did not receive any orders for physical therapy or any change to his treatment regimen. *Id.*

On June 7, 2009, Dr. Crutchfield examined Plaintiff, and noted that Plaintiff was improving, was getting up to the shower, and was beginning to have feeling with movement back in his legs. *Id.*, ¶ 12. Dr. Crutchfield also made a note for the staff to consider trying to get outpatient physical therapy to come to the Jail to do therapy. *Id.*

On June 8, 2009, Nurse Luttrell noted that she would talk with the trauma surgeon at Vanderbilt because the staff would need an order for physical therapy prior to scheduling outpatient therapy. *Id., ¶* 13. The Vanderbilt orthopedic group never ordered physical therapy. *Id.* Nurse Luttrell tried to schedule outpatient therapy, but outpatient therapy could not be scheduled with any of the local therapy groups. *Id.*, ¶ 14. Nonetheless, Plaintiff began to tolerate activities better and continued to improve. *Id.*

On June 9, 2009, Dr. Crutchfield ordered that Plaintiff should continue receiving Lortab 5 mg until June 18, 2009, and that he should begin taking Robaxin 700 mg twice per day and Ultram 100 mg twice per day for thirty days. *Id.,* ¶ 20. Plaintiff was also to continue receiving Ibuprofen 800 mg twice per day. *Id.*

On June 19, 2009, Nurse Miller provided treatment to Plaintiff and encouraged Plaintiff to self-help with his activities of daily living and to exercise his lower extremities. *Id.*, ¶ 15. Again on June 20, 2009, Nurse Miller encouraged Plaintiff to self-help with his activities of daily living and to exercise his legs and arms. *Id.*

On June 26, 2009, Dr. Mathews treated Plaintiff, and noted that Plaintiff was able to transfer from side to side with his arms and that his right leg was moving fine. *Id.*, ¶ 16. He also noted that Plaintiff was continuing to have trouble independently flexing his left hip. *Id.* Dr. Mathews approved of the therapy Plaintiff had been receiving from the nursing staff and recommended that Plaintiff perform self physical therapy twice per day. *Id.* Specifically, Dr. Mathews recommended that Plaintiff stand with his walker, walk to his commode chair with his walker, and move side to side in the bed. *Id.*

On July 9, 2009, Plaintiff complained of a broken tooth and sharp pain in his mouth where the tooth was located. *Id.,* ¶ 17. On July 13, 2009, Dr. Kelly, a local dentist, examined Plaintiff. *Id.* Thereafter, Dr. Kelley ordered Clindamycin 300 mg twice per day for ten days to treat Plaintiff's complaints. *Id.* Jail nursing staff administered this medication. *Id.*

On July 29, 2009, Plaintiff was sent to Vanderbilt Hospital for an orthopedic follow-up for his spinal injuries. *Id.*, ¶18. Upon his return, Nurse Nancy Weatherford noted that Plaintiff had been cleared and did not need to be seen again until February 2, 2010. *Id.* Nurse

Weatherford also noted that Plaintiff had been found to be stable enough to be moved out of the medical cell and into the medical pod. *Id.*

On August 22, 2009, Plaintiff completed a sick call form, complaining that he continued to have back and leg pain, and that his Ibuprofen and Robaxin were not stopping the pain. *Id.*, ¶ 21. In response to Plaintiff's complaints, Dr. Mathews examined Plaintiff on August 26, 2009. *Id.* Dr. Mathews noted that although Plaintiff had been paralyzed, he was now ambulating. *Id.* Dr. Mathews changed Plaintiff's Ibuprofen to Naprosyn 500 mg twice per day for thirty days. *Id.* He also continued Plaintiff's Robaxin 650 mg twice per day for his length of stay. *Id.*

On September 9, 2009, Plaintiff completed a sick call form, stating that the Naprosyn was not working. *Id.,* ¶ 22. In response to Plaintiff's complaint, Dr. Mathews prescribed Tramadol 50 mg twice per day for thirty days. *Id.* Every time Plaintiff complained regarding his pain medication, his complaints were addressed timely by the nursing staff and Dr. Mathews. *Id.,*¶ 23.

On September 21, 2009, Plaintiff completed a sick call form, complaining of spots on the bottom of his foot. *Id.*, ¶ 24. On September 22, 2009, Jail nursing staff examined Plaintiff and referred him to Dr. Mathews. *Id.* Dr. Mathews examined Plaintiff on September 23, 2009. *Id.* Dr. Mathews found twenty blisters on the bottom of Plaintiff's left foot, and prescribed a Medrol dose pack as treatment. *Id.*

On September 27, 200, Plaintiff completed an inmate request form, complaining that he had not been receiving his physical therapy. *Id.*, ¶ 25. Jail nursing staff responded, reminding Plaintiff that physical therapy had been addressed on June 26, 2009 by Dr. Mathews, who had recommended that Plaintiff perform in-house self therapy and had specifically identified the exercises that Plaintiff was to perform. *Id.*

On October 2, 2009, Plaintiff completed a sick call form, wanting to be seen for anxiety. *Id.*, ¶ 26. Jail nursing staff responded to Plaintiff's sick call request on October 3, 2009. *Id.* Nursing staff noted that Plaintiff expressed regret and remorse over his various angry sick call forms presented to medical. *Id.* Dr. Mathews ordered that Plaintiff receive Prozac 20 mg once per day to treat his complaints of anxiety and depression. *Id.*

On October 13, 2009, Plaintiff completed an inmate request form, complaining of spots on the bottom of his foot. *Id.*, ¶ 28. On October 21, 2009, Dr. Mathews examined Plaintiff. *Id.* Dr. Mathews noted that Plaintiff did not have shingles, and diagnosed him with areas of eczema on the sole of his left foot. *Id.* He prescribed a Medrol dose pack and Lidex cream. *Id.*

On October 27, 2009, upon Plaintiff's written request, the Criminal Court for Sumner County ordered that Plaintiff be furloughed to see Dr. Devon with Vanderbilt Orthopedics on November 4, 2009. *Id.*, ¶ 27. Plaintiff was accordingly transported to Vanderbilt on November 4, 2009, to see Dr. Devon at Vanderbilt Orthopedics. *Id.* Dr. Devon did not order any rehabilitation or physical therapy, but did order a six-month follow-up appointment. *Id.*

On November 4, 2009, Plaintiff completed a sick call form, complaining of bumps on his back. *Id.*, at ¶ 29. Jail nursing staff examined Plaintiff on November 5, 2009. *Id.* Dr. Mathews ordered that Plaintiff could use the Lidex cream he had prescribed for Plaintiff's foot on the affected area of his back. *Id.*

On November 17, 2009, Plaintiff completed a sick call form, complaining of red bumps under his arm. *Id.*, ¶ 30. On November 19, 2009, Dr. Mathews ordered that Plaintiff receive Doxycycline 100 mg twice per day for seven days and Clindamycin 300 mg twice per day for seven days to treat this condition. *Id.*

On November 27, 2009, Plaintiff completed a sick call form, complaining of trouble urinating. *Id.*, ¶ 31. Dr. Mathews ordered lab work, which showed no infection. *Id.*

Plaintiff remained incarcerated in the Sumner County Jail from December 2009 through February 24, 2010. *Id.*, ¶ 32. During this time, Plaintiff received appropriate treatment for all his complaints. *Id.* On February 24, 2010, Plaintiff was transferred to the West Tennessee State Penitentiary. *Id.*

Plaintiff refused his medication on June 8, 2009, July 16, 2009, August 11, 2009, August 17, 2009, August 30, 2009, and September 5, 2009. *Id.*, ¶ 23. Even with his medication refusal, Plaintiff's pain improved, as did his ability to move and walk during his stay at the Jail. *Id.* During his incarceration, Plaintiff went from being completely unable to move and being limited to a wheel chair to being able to walk again. *Id.*, ¶ 34.

While incarcerated at the Sumner County Jail, Plaintiff did not lose significant weight. *Id.*, ¶ 33. To assist in maintaining his weight, Plaintiff was placed on a double portion diet, which he remained on throughout his incarceration. *Id.*

Based upon Nurse Miller's education, training, and experience, all treatment provided to Plaintiff by herself and all other nursing personnel was within the recognized standards of acceptable professional practice for nurses in the community of Sumner County, Tennessee, as those standards existed in 2009. *Id.*, ¶ 35. On no occasion was Plaintiff at risk of serious harm, nor was Nurse Miller or any member of the medical staff indifferent to any complaint that Plaintiff made. *Id.* Every medical complaint of Plaintiff's was addressed timely and appropriately. *Id.*, ¶ 34. All Plaintiff's complaints regarding medication were likewise timely and appropriately addressed. *Id.*

# III. Analysis

## A. Local Rules 7.01(b) and 56.01(c) and (g)

Local Rule 7.01(b) states, in pertinent part:

> **b. Response.** Each party opposing a motion shall serve and file a response, memorandum, affidavits and other responsive material not later than fourteen (14) days after service of the motion, except, that in cases of a motion for summary judgment, that time shall be twenty-one (21) days after the service of the motion, unless otherwise ordered by the Court. Failure to file a timely response shall indicate that there is no opposition to the motion.

Defendant filed the pending Motion on October 4, 1010. Docket No. 55. Plaintiff has failed to respond to Defendant's Motion.

Additionally, with respect to Motions for Summary Judgment specifically, Local Rules 56.01(c) and (g) state, in pertinent part:

> **c. Response to Statement of Facts.** Any party opposing the motion for summary judgment must respond to each fact set forth by the movant by either (i) agreeing that the fact is undisputed; (ii) agreeing that the fact is undisputed for the purpose of ruling on the motion for summary judgment only; or (iii) demonstrating that the fact is disputed. Each disputed fact must be supported by a citation to the record. ...
>
> . . .
>
> **g. Failure to Respond.** Failure to respond to a moving party's statement of material facts, or a non-moving party's statement of additional facts, within the time periods provided by these Rules shall indicate that the asserted facts are not disputed for the purposes of summary judgment.

Plaintiff has failed to respond to Defendant's Concise Statement of Undisputed Facts. Pursuant to Local Rule 56.01(g), Plaintiff's failure to respond indicates "that the asserted facts are not disputed for the purposes of summary judgment." Accordingly, there are no genuine issues as to any material fact and all that remains to be determined is whether Defendant is

entitled to a judgment as a matter of law.

## B.  Motion for Summary Judgment

It would be inappropriate to grant Defendant's Motion solely on the ground that Plaintiff

has failed to respond.  *See Stough v. Mayville Community Schools*, 138 F.3d 612, 614 (6th Cir.

1998).  As the Sixth Circuit has stated:

> [A] district court cannot grant summary judgment in favor of the
> movant simply because the adverse party has not responded.  The
> Court is required, at a minimum, to examine the movant's Motion
> for Summary Judgment to ensure that he has discharged [his
> initial] burden ...  The federal rules require that the party filing a
> Motion for Summary Judgment "always bears the burden of
> demonstrating the absence of a genuine issue as to a material fact."

*Id.* (citations omitted).  The Court will, therefore, consider whether Defendant has met its

burdens under the appropriate summary judgment standards discussed below.

Under Fed. R. Civ. P. 56(c), summary judgment is appropriate only "if the pleadings,

depositions, answers to interrogatories, and admissions on file, together with the affidavits, if

any, show that there is no genuine issue as to any material fact and that the moving party is

entitled to a judgment as a matter of law."  A dispute is "genuine" only if "the evidence is such

that a reasonable jury could return a verdict for the nonmoving party."  *Anderson v. Liberty

Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 2510, 91 L. Ed. 2d 202 (1986).

In order to prevail on a Motion for summary judgment, the moving party must meet the

burden of proving the absence of a genuine issue as to material fact concerning an essential

element of the opposing party's claim.  *Celotex v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548,

2553, 91 L. Ed. 2d 265 (1986); *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1477 (6th Cir.

1989).  In determining whether the moving party has met its burden, the Court must view the

evidence in the light most favorable to the nonmoving party.  *Matsushita Electric Indus. Co. v.*

*Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S. Ct. 1348, 1356, 89 L. Ed. 2d 538 (1986).

Fed. R. Civ. P. 56 provides that the nonmoving party may not rest upon the mere allegations or denials of his or her pleading, but his or her response, by affidavits or otherwise, must set forth specific facts showing that there is a genuine issue for trial.  If a nonmoving party, however, fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial, there is no genuine issue as to any material fact because a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial.  *Celotex*, 477 U.S. at 322-23, 106 S. Ct. at 2552, 91 L. Ed. 2d at 273.  When this occurs, the moving party is entitled to summary judgment as a matter of law.  *Id.* at 322-23, 106 S. Ct. at 2552; *Williams v. Ford Motor Co.,* 187 F.3d 533, 537-38 (6th Cir. 1999).

## C.  42 U.S.C. § 1983 / Eighth Amendment

Plaintiff alleges violations of his Eighth Amendment rights pursuant to 42 U.S.C. § 1983. *See* Docket No. 1.  Section 1983 provides, in part, that:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress...

Thus, in order to state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution or laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law.  *West v. Atkins*, 487 U.S. 42, 48, 108 S. Ct. 2250, 2254-55 (1988)*, citing Parratt v. Taylor,* 451 U.S. 527, 535, 101 S. Ct.

1908, 1913, 68 L. Ed. 2d 420 (1981) (overruled in part on other grounds, *Daniels v. Williams,*

474 U.S. 327, 330-331, 106 S. Ct. 662, 88 L. Ed. 2d 662 (1986)); *Flagg Bros., Inc. v. Brooks,*

436 U.S. 149, 155, 98 S. Ct. 1729, 1733, 56 L. Ed. 2d 185 (1978).  The traditional definition of

acting under color of state law requires that the defendant in a § 1983 action have exercised

power "possessed by virtue of state law and made possible only because the wrongdoer is

clothed with the authority of state law."  *Id.* at 49, 108 S. Ct. 2255, *quoting United States v.*

*Classic,* 313 U.S. 299, 326, 61 S. Ct. 1031, 1043, 85 L. Ed. 1368 (1941).

In order to establish an Eighth Amendment claim, an inmate must satisfy a two-prong

test: (1) the deprivation alleged must be objectively serious; and (2) the official responsible for

the deprivation must have exhibited deliberate indifference to the inmate's health or safety.

*Farmer v. Brennan*, 511 U.S. 825, 834, 114 S. Ct. 1970, 1977, 128 L. Ed. 2d 811 (1994).

"[D]eliberate indifference to serious medical needs of prisoners constitutes the

'unnecessary and wanton infliction of pain' proscribed by the Eighth Amendment."  *Estelle*, 429

U.S. at 104.  The Supreme Court explained that "whether the indifference is manifested by

prison doctors in their response to the prisoner's needs or by prison guards in intentionally

denying or delaying access to medical care or intentionally interfering with the treatment once

prescribed," it states a claim under § 1983.  *Id.* at 104-05.

Not every prisoner's allegation of inadequate medical treatment, however, is a violation

of the Eighth Amendment.  *Estelle*, 429 U.S. at 105.  For instance, courts have held that the

accidental, inadvertent, or negligent failure to provide adequate medical care does not state such

a claim.  *Id.* at 105-06 (citations omitted).

Pursuant to Supreme Court precedent, the Sixth Circuit held, in *Hunt v. Reynolds*, that

Eighth Amendment deliberate indifference claims must contain both an objective component, "that [plaintiff's] medical needs were sufficiently serious," and a subjective component, "that the defendant state officials were deliberately indifferent to the plaintiff's needs." 974 F.2d 734, 735 (6th Cir. 1992) (citations omitted).

In order to satisfy the objective requirement, the Supreme Court requires that an inmate demonstrate evidence of a current harm or evidence of a medical complaint or condition of confinement that "is sure or very likely to cause serious illness and needless suffering." *Helling v. McKinney*, 509 U.S. 25, 33, 113 S. Ct. 2475, 2480, 125 L. Ed. 2d 22 (1993). Under the Eighth Amendment, inmate plaintiffs, therefore, are not required to prove they suffer from an actual physical injury. *Boretti v. Wiscomb*, 930 F.2d 1150, 1155 (6th Cir. 1991) (*citing Parrish*, 800 F. 2d at 610). At the very least, however, plaintiffs must allege unnecessary pain or suffering due to prison officials' deliberate indifference. *Id.*

As for the subjective element, the Sixth Circuit has held that "a determination of deliberate indifference does not require proof of intent to harm." *Weeks v. Chaboudy*, 984 F.2d 185, 187 (6th Cir. 1993). However, there must be a showing of deliberate indifference to an inmate's *serious* medical needs. *Molton v. City of Cleveland*, 839 F.2d 240, 243 (6th Cir. 1988) (emphasis added) (*citing Westlake v. Lucas*, 537 F. 2d 857, 860 n. 3 (6th Cir. 1976)). In fact, "[k]nowledge of the asserted serious needs or of circumstances clearly indicating the existence of such needs, is essential to a finding of deliberate indifference." *Horn v. Madison County Fiscal Court*, 22 F.3d 653, 660 (6th Cir. 1994) (citations omitted). The inquiry, therefore, according to the Sixth Circuit, is "[w]as this individual prison official aware of the risk to the inmate's health and deliberately indifferent to it?" *Thaddeus-X*, 175 F.3d at 402 (*citing Farmer*,

511 U.S. at 837, 844).

**D.  The Case at Bar**

As has been noted, Plaintiff alleges that Defendant violated his Eighth Amendment rights pursuant to 42 U.S.C. § 1983.  The undisputed facts, however, demonstrate that Plaintiff received appropriate and timely medical care.  Plaintiff was treated as per his physicians' orders, was administered his medications, had his sick call requests promptly responded to, was transported to his follow-up appointments, and experienced improvement such that he went from being paralyzed and wheel chair bound to being ambulatory.  Plaintiff was placed on a double portion diet, and remained on that double portion diet throughout his incarceration.  Plaintiff has failed to adduce any evidence whatsoever to demonstrate that Defendant violated his constitutional rights.  Accordingly, Plaintiff cannot sustain his claim.

Moreover, Plaintiff cannot sustain his claim against Defendant because § 1983 does not permit the imposition of liability based upon *respondeat superior*.  *Polk County v. Dodson*, 454 U.S. 312, 325, 102 S. Ct. 445, 454, 70 L. Ed. 2d 509 (1981).  *See also, Monell v. Dep't of Soc. Serv.*, 436 U.S. 658, 694, 98 S. Ct. 2018, 2037, 56 L. Ed. 2d 611 (1978); *Street v. Corrections Corp. of America*, 102 F.3d 810, 818 (6th Cir. 1996).

### IV.  Conclusion

For the foregoing reasons, the undersigned recommends that  Defendant's Motion for Summary Judgment be GRANTED.

Under Rule 72(b) of the Federal Rules of Civil Procedure, any party has fourteen (14) days after service of this Report and Recommendation in which to file any written objections to this Recommendation with the District Court.  Any party opposing said objections shall have

fourteen (14) days after service of any objections filed to this Report in which to file any response to said objections. Failure to file specific objections within fourteen (14) days of service of this Report and Recommendation can constitute a waiver of further appeal of this Recommendation. *See Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L. Ed. 2d 435 (1985), *reh'g denied*, 474 U.S. 1111 (1986); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72.

E. CLIFTON KNOWLES
United States Magistrate Judge